### UNITED STATES v. 380 ACRES OF LAND MORE OR LESS SITUATED IN BULLITT COUNTY, KY., et al.

#### No. 433.

District Court, W. D. Kentucky, Louisville Division.

Sept. 14, 1942.

W. S. Heidenberg, of Louisville, Ky., for Fannie Hill Pearl Purcell Powers.

Bertram C. VanArsdale, of Louisville, Ky., guardian ad litem for James Lee Powers.

Woodward, Dawson & Hobson, of Louisville, Ky., for Marjorie Purcell Becker, and others.

MILLER, District Judge.

In the present action to condemn 380 acres of land in Bullitt County, Kentucky, the Government has taken title to a certain tract described as Parcel No. 2 consisting of 100.2 acres of land formerly owned by J. A. Hill, who died in September, 1900, leaving a last will and testament which disposed of this tract. The United States has paid into Court the compensation for this property and the matter is before me now to determine the proper disposition of these funds.

The real estate in question was devised by the will of J. A. Hill to his wife for life. It was then provided by the 5th clause of the will as follows:

"5th. After the death of my beloved wife Matilda Francis Hill, I will and bequeath unto my beloved·adopted daughter Fannie Hill Pearl all of my property that may remain after the death of my wife to

have and to use for her comfort and support during her natural life and should said Fannie Hill Pearl have any children all the above named property shall descend to them as my legal heirs.

"6th. But should said Fannie Hill Pearl leave no children at her death it is my will that all my property remaining shall descend and go to the County of Bullitt in the State of Kentucky for the purpose and use of helping to buy a farm and erect buildings for the comfort and support of the poor paupers of the County."

The adopted daughter Fannie Hill Pearl (Fannie Hill Pearl Purcell Powers) is still living and has five children, four of whom are over 21 years of age, and one of whom is an infant 17 years of age. Mrs. Powers and one of the adult children have filed a motion that Mrs. Powers be permitted to withdraw funds arising from the condemnation of Parcel No. 2 for the purpose of having them immediately reinvested in other real estate and/or Government securities. The guardian ad litem for the infant defendant has indicated his approval of this motion. But the remaining three children have objected to the granting of this motion and insist that the proceeds be divided between their mother and the children as their respective interests may appear, as may be determined by application of the life tables.

 It was the evident intent of the testator that the adopted daughter (the present life tenant) have the use of the property as a home as long as she lived. This purpose would be defeated if the proceeds should be divided between the life tenant and the remaindermen, as the amount which the life tenant would receive would not be sufficient to provide a similar home for an indefinite period of time. This is not a voluntary sale of the property by any of the parties in interest. It has been changed from real estate into cash by the exercise on the part of the Government of its dominant power of eminent domain. The life tenant would prefer to retain title, possession and use of the real estate in question, and she would have the right to do this except for the present proceedings which are not of her choosing. In view of the nature of the right of eminent domain, I believe the parties who are thus divested of title should be protected in their former rights as between themselves insofar as it is possible for the Court to so

protect them. The most reasonable and practical way for this to be done in the present case is to have the proceeds paid by the Government for the property in question to be reinvested in other suitable real estate, the title to which is to be taken in accordance with the provisions of the will of J. A. Hill concerning the property condemned. This does not give the life tenant the power to arbitrarily reinvest the funds. The interests of the remaindermen should be considered, and any valid objection which they may wish to make to the proposed reinvestment will be given due consideration. The proposed reinvestment should have the approval of the Court after all parties have had an opportunity to be heard. Secondly, the provisions of the Civil Code of Practice also furnish a guide in the matter. The present action was filed on March 7th, 1942, before Chapter 137 of the 1942 Acts of the Kentucky Legislature revising certain code provisions relative to judicial sales of real estate became effective. Chapter 137 provided that it should not affect any suit instituted before it went into effect and that any pending suit might proceed to completion in accordance with the existing law under which it was brought. If any of the parties in interest had instituted a proceeding for a judicial sale of Parcel No. 2 it would have been handled in accordance with provisions of Sections 491 and 491a of the Civil Code of Practice. These sections provide for a sale and a reinvestment of the proceeds. Under Section 491 the reinvestment must be in other real estate, not necessarily within the State; but under Section 491a the reinvestment could be in both real estate and Government bonds. McClure v. Crume, 141 Ky. 361, 132 S.W. 433; Osborne Jr's Guardian v. Osborne's Trustees, 189 Ky. 754, 226 S.W. 101. Section 490 of the Civil Code which authorizes a judicial sale and a division of the proceeds between the joint owners has no application to a situation where the title is held like it is in the present case. Whitney v. Dorsey, 268 Ky. 773, 105 S.W.2d 1025. Since the three children who are now asking for a division of the proceeds would not have the right to such proceeds if any one of the parties asks for a judicial sale, I do not believe their rights should be increased merely because the Government has exercised its power of eminent domain and taken the property from them without the consent of the owner of the life estate.

8

In the present case it appears necessary that the funds to be reinvested should remain under the control of the Court until the reinvestment is actually made. Crutcher v. Rodman, 118 Ky. 506, 81 S.W. 252, 26 Ky.Law Rep. 294. Accordingly, the money will not be disbursed to the life tenant for the purpose of reinvestment by her, and that part of her motion is overruled. However, the remaining part of her motion to the effect that the funds be reinvested instead of distributed is sustained.